## JONES v. TEXAS INDEMNITY INS. CO.

### No. 4647.

Court of Civil Appeals of Texas. El Paso.
June 1, 1949.

Rehearing Denied June 29, 1949.

Webb & Rogers and Lester C. Newman, Sherman, for appellant.

Freeman, Wolf, Milam & Bryant and Tom S. Milam, Sherman, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Grayson County, in a workmen's compensation case. The Texas Indemnity Insurance Company, hereinafter called appellee, instituted action against Vincent E. Jones to set aside an award of the Industrial Accident Board awarding the said Jones compensation as an employee of Montgomery Ward & Company, said appellee being its insurance carrier. The said Jones by cross-action sought recovery against appellee on said workmen's compensation policy. At the close of the evidence the court instructed the jury to return a verdict in favor of appellee. On this verdict judgment was rendered by the court that the appellant Jones take nothing. Appellee's motion for an instructed verdict was in substance that at the time appel-

lant received his injury he was not acting in the course and scope of his employment and the injuries to him in the automobile accident were not sustained by him while he was acting in the furtherance of the affairs of his employer, and in the scope and course of his employment.

There is but one question presented, and that is, did the injuries suffered by appellant arise out of his employment and at the time of suffering same was he acting in the course thereof. Where there is evidence sustaining the contentions of appellant we shall assume the truth thereof, although there may only be an issue of fact for the jury.

Appellant was injured on July 24, 1947, at which time he had been employed continuously by Montgomery Ward & Company for about seventeen years. His duties were those of a service man; he would service and repair radios, refrigerators, washing machines, electric cleaners, irons, fans, motors for power plants, milkers, milking machines, and all articles that Montgomery Ward sold, but particularly electrical appliances. Part of his work was done in the store of his employer in Sherman, but at the store he would also get assignments to the homes of customers to do the repair and service work on equipment. He covered a large territory. The customers of Montgomery Ward would call him at his home and he would frequently go from there to make repairs on their equipment. It may fairly be inferred that this was a duty of his employment. He was on call for emergencies at all times of the day or night, including Sundays. It seems that in many cases he took the calls at his home from the customers direct.

When he first started working in the service department of Montgomery Ward he was originally required to furnish a small pickup truck in which to carry his equipment and tools to enable him to do such work. In 1937 he was permitted to furnish a passenger car in lieu of the pickup truck for this purpose. He was paid mileage of from 7¢ to 4¢ per mile for use of the pickup truck or passenger car when on service calls. At the time of his injury he was paid a salary of $48 per week and 5¢ per mile for the use of his automobile in making service calls. The evidence is silent as to whether his employer paid for the gasoline in his going to and returning from his home. It is clear from the evidence that he was not paid mileage for the trip upon which he was injured.

Jones lived about four miles west of Sherman. On the morning of July 24, 1947, he left his home in his passenger car which he used at all times to make service calls and which on that occasion and at all times he kept equipped with tools and supplies for the servicing and repairing of equipment sold by Montgomery Ward. He was proceeding on U. S. Highway 82 which runs between Gainesville and Sherman, from his home to his employer's store in Sherman, when he was struck by a trailer which came unfastened from a car approaching him, and he was seriously injured. This was the shortest and most direct route from his home to his employer's place of business. One of his purposes in driving his car along the highway to his place of employment was to have same available to go on service calls from his employer's store, also to transport the tools and equipment of his employer to the store to be available in discharging the duties of his employer, these having been transported by the direction of his employer to his home from his employer's store, in accordance with the duties of his employment. A relative was riding with him at the time of the accident.

According to the provisions of the Statute, to be compensable an injury must be one "having to do with and originating in the work, business, trade or profession of the employer received by an employe, while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Art. 8309, R.S. 1925, Vernon's Ann.Civ.St. art. 8309.

Beyond any question it is a general rule that an injury received by an employee on the way to or from his employment is not compensable under this Section. However, there are exceptions to this rule. Where an employment as an incident to its prosecution requires traveling along streets or

highways, an injury sustained by an employee acting in the course of such employment is compensable, where the employment as an incident to its prosecution requires traveling along streets or highways an injury sustained by employee while returning without material deviation to the place of his abode or place of his employment, same is compensable. Aetna Life Ins. Co. v. Palmer, Tex.Civ.App., 286 S.W. 283; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 274, 136 S.W. 210; Baylor Law Review, Vol. 1, p. 391.

In applying the applicable statute it must be borne in mind that same being remedial in its character, that if there be any reasonable doubt which may arise in a particular case as to the right of the injured employee to compensation, same should be solved in favor of such right. Security Union Ins. Co. v. McClurkin, Tex.Civ.App., 35 S.W.2d 240, Wr.Ref.

In the case just cited one answering a telephone call in his home, the telephone being paid for by his employer, injured by stepping on a needle or pin was held to be entitled to compensation. The phone call related to his employer's business, and the phone, although in the employee's home, was paid for by his employer. Generally speaking, workmen's compensation insurance covers the risks and hazards taken in order to perform the employee's duties, unless same are specifically excepted.

Under Jones' contract of employment he was required to keep and maintain an automobile for use in his employer's business. In answering service calls, Jones would be clearly acting in the course of his employment and the risks from automobile traffic while so answering such calls would arise out of his employment.

Jones when injured was driving the automobile which he was compelled to maintain, from his home to his employer's place of business in Sherman. He was transporting in the automobile his employer's tools and equipment to have them available for use in his employer's business. Further, to have the automobile in question ready and available for use in his employer's business the automobile had been taken to his home for the purpose of use in his employer's business. He waited on the customers of his employer when at home without specific direction; he was not only subject to call for duty when at home, but was on duty. He took his automobile home and kept it there because it was part of his employment so to do. In returning the automobile to the place of his employer he was returning it from a point where he had been directed by his employer to take same in order to perform the duties of his employment. At the time he suffered the injury in question he was returning the automobile to a point where he had taken same in the prosecution and furtherance of his employer's business. At the very time of his injury he was engaged in transporting the tools and equipment of his employer, for use in his employment.

■ Appellee relies strongly on the cases of Smith v. Texas Employers' Insurance Association, 129 Tex. 573, 105 S.W.2d 192, and United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210. This opinion was adopted by the Supreme Court. There is a substantial distinction between the case at bar and the cases of Smith v. Texas Employers' Ins. Ass'n, supra, and U. S. Fidelity & Guaranty Co. v. Flanagan, supra. In the Flanagan Case, the case of Maryland Casualty Company v. Smith, Tex.Civ.App., 40 S.W.2d 913, is criticized, and the California case of Postal Telegraph Cable Co. v. Industrial Accident Comm., 1 Cal.2d 730, 37 P.2d 441, 96 A.L.R. 460, is referred to with approval. It is common to each of the above cases that the employee was either going to the place of his employment or going home therefrom. In each case his actual employment had not commenced, or had ceased. In none of them was the employee engaged in the duties of his employment, in none of same was he engaged on any special mission of his employer. In order for a risk to arise out of an employment it must be incidental thereto. An injury does not arise out of employment unless the employee is engaged in the business of his employer.

In the case we have here the employee Jones was at the time of his injury engaged in the performance of the duty of his employment. He was doing what his contract of employment either expressly authorized him to do or required him to do. He was driving the automobile from a place he had taken same in the authorized prosecution of his employer's business to be further used in the prosecution of that business at another place. In this automobile were tools and equipment of his employer, necessary to the efficient prosecution of the business he was employed to perform for his employer.

The case of Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128, is deemed to strongly support our holding that the evidence does not establish as a matter of law that the injury did not arise out of the employment of appellant Jones. Stated in another way, the evidence is at least sufficient to raise the issue that Jones at the time of his injury was engaged in the work of his employer and was injured through a risk arising out of and incident to the prosecution of that work. See also Texas Employers' Ins. Ass'n v. Herron, Tex.Civ.App., 29 S.W.2d 524; Lehers v. Federal Underwriters' Exchange, Tex.Civ.App., 79 S.W. 2d 925, affirmed 132 Tex. 140, 120 S.W.2d 791; Maryland Casualty Co. v. Boone, Tex.Civ.App., 115 S.W.2d 1130, Wr.Dis.; Texas Employers' Ins. Ass'n v. Stanton, Tex.Civ.App., 140 S.W.2d 337; Voehl v. Indemnity Ins. Co., 288 U.S. 162, 170, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; Maryland Casualty Co. v. Levine, 5 Cir., 67 F.2d 816, and cases cited.

In regard to the cases above cited it may be said in most if not all the employee while driving either to or from his place of business was engaged on a special mission of his employer. This fact, in our opinion, does not militate against their application to the situation here presented. Here he was acting under the general direction of his employer. The use of his automobile in the manner it was being used at the time of his injury was either expressly or impliedly required by the terms of his contract of employment. If his employment required that he take the tools and equipment to his home he was acting in the course of his employment in returning same.

The case of Davis v. Bjorenson, 229 Iowa 7, 293 N.W. 829, 830, is deemed to be almost a parallel case to the case at bar, and we take the liberty of quoting therefrom: "In the case at bar claimant's duties consisted of inside shop work and outside service calls requiring transportation. These calls were made from the shop in the daytime and from claimant's home at other times upon call by the employer to claimant at his home. Under the employment agreement claimant regularly furnished his automobile to the employer for use in the business as a service car. At night the car was kept at claimant's home where he was subject to emergency service calls requiring its use. During regular working hours the car was kept at the employer's place of business for use in the business, not only by claimant, but also by the employer and by other employees. Thus the car was an instrumentality of the business at all hours of the day and was subject to that use at night. It happened that claimant received no orders to make emergency service calls during the night before he was injured. Consequently, it was his duty and this duty was regular and definite, to take the automobile to the employer's shop for its use in the business, by others as well as claimant. In so doing he was performing for his employer a substantial service required by his employment at the place and in the manner so required. In the language of the able trial court, 'claimant had no selection of his mode of travel to work, that he was required under the terms of his contract to drive his own car from his home to the shop where it was available to his employer for use in the employer's business.'"

In our opinion the evidence clearly raised the issue that the duties of the employment of Jones required him to drive on the public roads; that when he was injured he was returning the automobile in question to his employer's place of business; that he was

transporting his employer's equipment and tools under its express and implied directions, for use in its business.

The court erred in directing a verdict in favor of appellee. It is therefore ordered that the judgment of the trial court be in all things reversed and the case be remanded to the trial court.