605 A.2d 145

BOARD OF TRUSTEES OF THE EMPLOYEES'
RETIREMENT SYSTEM OF THE CITY OF
BALTIMORE

v.

Donna B. NOVIK.

No. 76, Sept. Term, 1991.

Court of Appeals of Maryland.

April 29, 1992.

Richard T. LaFata, Principal Counsel, argued and on brief, Neal M. Janey, City Sol. and Kim I. Montroll, Asst. Sol., on brief, Baltimore, for petitioner.

Terrence B. Byrne, argued and on brief and Goldstein & Byrne, on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

Baltimore City Code (1989 Supp.), Article 22, § 9(j) provides accidental disability retirement benefits to an employee who suffers an accident and subsequent injury "while in the actual performance of duty with the City at a definite time and place." The question presented in this case is whether Donna Novik, a secretary employed by the City, was in the "actual performance of duty" with the City when she slipped and fell on the ice on a City-owned parking lot

provided for employees while walking from her car to the building in which she worked.[1]

## I.

On May 10, 1989, Novik filed an application for accidental disability retirement benefits with the City Board of Trustees of the Employees' Retirement System. On December 5, 1989, after a hearing, the Board found that Novik was permanently incapacitated as a result of her accidental injury and that the accident occurred while she was in the "actual performance of duty" within the contemplation of § 9(j) of Article 22 of the Baltimore City Code.

The Circuit Court for Baltimore City (Ward, J.) affirmed the Board's decision. It focused on cases decided under the Workers' Compensation Act, Maryland Code (1985 Repl. Vol.), Article 101, § 15, in which employees, injured on the employer's parking lot while going to or coming from work, were found to have been injured in the course of their employment. It concluded that the standard of compensability under § 15 of that Act—that the accident "[arose] out of and in the course of [the worker's] employment"—was the legal equivalent of the standard set forth in § 9(j) of Article 22, namely, that the injury occurred "while in the actual performance of duty." The court rejected the City's argument that § 9(j) of Article 22 "sets up a stricter standard than that applied to workmen's compensation parking lot cases under Article 101, § 15."

The Court of Special Appeals affirmed the circuit court's judgment. It concluded that the evidence established that Novik's injury occurred "while in the actual performance of duty." *Board of Trustees v. Novik*, 87 Md.App. 308, 589 A.2d 976 (1991). Specifically, the intermediate appellate

---

1. Section 9(j) provides that the injury must permanently incapacitate the employee from the further performance of duty. To be eligible for benefits, this section requires a 75% anatomical loss of use of specified parts of the body, or a 50% or more anatomical loss of each of two or more parts of the body.

court declined the City's invitation "to define the 'actual performance of duties' test strictly and literally, to preclude disability benefits unless the disabling injury occurred while the employee was physically at her work station." *Id.* at 314–15, 589 A.2d 976. If this were so, the court said

"no recovery would be permissible if the injury occurred even during a temporary interruption—going to the restroom, sipping a cup of coffee, chatting momentarily with a co-worker. Such a construction, we think would be not only unreasonable but extremely difficult to administer. The 'actual performance' test must contemplate the reality of the workplace and include conduct that is permissible, commonly engaged in by employees, and reasonably incidental to the performance of the employees' duties. An employee's presence on the employer's property while proceeding to or from his or her work station could fairly be regarded as being within that test."

*Id.* at 315, 589 A.2d 976.

We granted the City's petition for a writ of certiorari to determine whether the standard of compensability under § 9(j) of Article 22 of the Baltimore City Code was the same as that mandated by § 15 of Article 101 of the Workers' Compensation Act.

## II.

■■■■ Under the Workers' Compensation Act, injuries sustained by employees while going to or coming from work do not, as a general rule, "arise out of and in the course of their employment, as the hazards they encounter ... are ordinarily not incidents to the employer's business." *Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 357, 118 A.2d 486 (1955). This so-called "Going and Coming" rule is subject to several exceptions, one of which—the "premises" exception—provides that an employee who is accidentally injured on the employer's premises while going to or coming from work is considered to have been in the course of employment. *Saylor v. Black & Decker Mfg. Co.,* 258 Md.

605, 608, 267 A.2d 81 (1970). More specifically, we said in *Salomon v. Springfield Hospital,* 250 Md. 150, 155, 242 A.2d 126 (1968) that although "an employee who has arrived on his employer's premises as usual, in preparation for beginning his day's work, is considered to be on the premises and therefore covered by workmen's compensation even though his actual employment has not begun, ... [the] 'premises' does not necessarily include all property owned by an employer." In this regard, we noted in *Saylor, supra,* 258 Md. at 609, 267 A.2d 81, that "there must be a work association between the part of the employer's property where the employee was injured and the area in which [the employee] worked."

In *Proctor–Silex v. DeBrick,* 253 Md. 477, 252 A.2d 800 (1969), we approved payment of workers' compensation benefits for injuries to an employee occurring on a parking lot provided by the employer for the use of the employee. In that case, the employee parked her vehicle on the parking lot provided by her employer, which was located across the street and down slightly from the employer's building. The employee walked diagonally across the street in question and then on the pavement provided for pedestrian traffic in front of her employer's plant to a point somewhere between the entrance to the office of the plant and the entrance for the employees. At this location, she injured herself when she slipped and fell on the ice. In holding that the employee was entitled to workers' compensation benefits, we stated:

> "Where, as here, the claimant had arrived on the premises of her employer and was proceeding without deviation of any kind directly to her work, it would by unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. Therefore, we hold the injuries sustained by Mrs.

DeBrick to have arisen out of and in the course of her employment."

*Id.* at 489, 252 A.2d 800.

1 Larson, *The Law of Workmen's Compensation,* §§ 15.11 and .42(a) (1990 ed.), cites the general rule as follows:

"The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey. Between these two extremes, a compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity: for an employee having fixed hours and place of work, going to and from work is covered *on the employer's premises.*

\*      \*      \*      \*      \*      \*

"As to parking lots owned by the employer, or maintained by the employer for his employees, practically all jurisdictions now consider them part of the 'premises,' whether within the main company premises or separated from it. This rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer."

Consistent with Larson, our cases have clearly extended employer liability for workers' compensation benefits "at least as far as the parking lot boundaries." *Saylor, supra,* 258 Md. at 609, 267 A.2d 81. *See May Dept. Stores v. Harryman,* 307 Md. 692, 517 A.2d 71 (1986); *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 373 A.2d 613 (1977); *Giant Food Inc. v. Gooch,* 245 Md. 160, 225 A.2d 431 (1967).

### III.

The City argues that the standard of compensability for pension benefits is not legally equivalent to the standard for workers' compensation. It states that because the language of the statutes "clearly differs ... [,] it follows that the standards must differ as well." This is so, the City claims, because workers' compensation serves a purpose "markedly distinct" from that of pension benefits. It says that workers' compensation statutes are designed primarily to enable the employee to receive the treatment needed to recover and return to work, while accidental disability retirement benefits are designed to compensate in a more comprehensive way the employee who is permanently disabled by an injury which occurred in the actual performance of the employee's duties. Consequently, the City argues that it is reasonable to conclude that a stricter standard is intended under the disability pension benefits system than under workers' compensation. While conceding that Novik's injury is compensable under the workers' compensation statute, it is the City's position that her injury is not compensable under § 9(j) of Article 22 because, even though she was on her way to work and on a City-owned parking lot at the time of her accident, she was not engaged "in the actual performance of duty."

Novik contends that the standard of compensability for pension benefits is legally equivalent to the standard for workers' compensation. According to Novik, the basic similarity of the workers' compensation and pension benefits statutes "compel[s] the Courts to view the two as analogous, when factually there is no legal distinction ... [a]nd in doing so, apply the principles of the former to the latter." She maintains that both statutes must be liberally construed and that our cases have "effectively eliminated the proposition of a stricter standard of interpretation, giving greater credence to the position that the language [of the statutes] is legally equivalent." Finally, Novik posits that she sustained her injuries while "in the actual performance

of duty" because the accident occurred on the premises of her employer.

## IV.

Our prior decisions have "recognized a striking analogy between the terms 'in the actual performance of duty' and 'out of and in the course of his employment.'" *Police Comm'r v. King,* 219 Md. 127, 134–35, 148 A.2d 562 (1959). For example, in *Heaps v. Cobb,* 185 Md. 372, 45 A.2d 73 (1945), the Chief Engineer of Baltimore City died in an automobile accident while driving to a work-related appointment. Although the City provided the employee with a car to transport himself to and from appointments, on this occasion he had substituted his own vehicle for the City-owned car. In granting the claim for accidental death benefits under Baltimore City Code, Article 30, § 6(9),[2] the Court held that the employee was engaged in the "actual performance of duty" at the time the accident occurred because his duties included driving himself to work-related appointments. The Court noted the existence of the "furnished transportation" exception to the "Going and Coming" rule in workers' compensation cases, *i.e.,* that "where an employee is furnished transportation by his employer in connection with the latter's business, ... the employee is to be considered on duty while using this transportation." 185 Md. at 383. In analogizing workers' compensation cases with pension disability cases, the Court explained:

> "While the adjudicated cases in which this principle has been applied are mostly those under workmen's compensation statutes, dealing with accidental injuries 'arising out of, and in the course of, employment,' the analogy between them and the pension cases like the one at bar is so close on the point at issue that we find no legal distinction in applying the principle. The test in both

---

2. Art. 30, § 6(9) requires that "such death was the ... result of an accident occurring ... while the member was in the actual performance of duty."

classes of cases is whether the transportation was furnished by the employer as an incident of the employment, and the nature of the mission on which the employee was engaged." *Id.* at 383, 45 A.2d 73.

*Rumple v. Henry H. Meyer Co., Inc., supra,* involved a workers' compensation claim for injuries sustained while the employee drove home in a truck provided by the employer as an incident to the employment. In applying the furnished transportation exception to the "Going and Coming" rule, the Court held that the employee sustained an injury arising "out of and in the course of his employment" and that he was deemed to be on duty during such transportation. *Id.* 208 Md. at 359, 118 A.2d 486. The Court, citing *Heaps v. Cobb, supra,* again pointed out that the phrase "actual performance of duty" has been "treated as legally the same" as the above-quoted language of the workers' compensation statute. *Id.* at 357, 118 A.2d 486.

In *Police Comm'r v. King, supra,* the widow of a deceased police officer sought accidental death benefits under a Baltimore City police pension ordinance that provided such benefits where the officer was killed "while in the actual performance of duty." The officer was accidentally killed by his own revolver when he apparently slipped while descending the stairs in his home while preparing to go to work; at the time, he was partially dressed and was carrying police equipment, including his revolver in his hands. Police regulations required that officers be on duty, or ready for duty, at all times and suitably armed. After recognizing the "striking analogy" between the terms "in the actual performance of duty," as used in the police pension ordinance, and "arising out of and in the course of employment," as used in the workers' compensation statute, we said that both laws should be liberally construed. *Id.* 219 Md. at 133–35, 148 A.2d 562. The Court noted the general rule that injuries sustained by employees while going to or returning from their regular place of work do not arise out of and in the course of employment. It held that a police officer "who is dressing himself prior to

starting on his trip to work is [not] 'in the actual performance of duty' or 'in the discharge of duty.' " *Id.* at 135, 148 A.2d 562. We said that affording a reasonable and liberal construction to the provisions of the ordinance, the officer was "off-duty and not performing or discharging any actual police duty at the time of his unfortunate accident" and thus was not in the actual performance or discharge of his police duties. *Id.* at 136, 148 A.2d 562.

In *Board of Trustees v. Grandinetti*, 269 Md. 733, 309 A.2d 764 (1973), a Baltimore City employee sought accidental disability retirement benefits under a city ordinance which required that the member be permanently incapacitated for duty as a result of an accident "occurring while in the actual performance of duty." The issue before the Court was whether the employee's incapacity was caused by an "accidental" injury sustained in the performance of duty. *Id.* at 735, 309 A.2d 764. The evidence showed that the employee suffered a heart attack following a physical assault upon him by a co-worker and subsequent threats of bodily harm. We said that "while analogies to workmen's compensation cases are frequently helpful in pension cases, ... any analogy must be drawn keeping clearly in mind the difference between the workmen's compensation test [an accidental personal injury sustained by the employee arising out of and in the course of his employment]" and the test under the ordinance, namely, an accident occurring in the actual performance of duty. *Id.* at 738, 309 A.2d 764. We noted that an injury, to be accidental under the workers' compensation law, required some unusual condition in the employment—an unusual strain, exertion, or condition not customarily encountered in the employment. *Id.* at 739, 309 A.2d 764. We reviewed a number of pension disability cases which applied a like rationale in determining whether the injury was "accidental." We also reviewed several workers' compensation cases. The first *Yellow Cab Company v. Bisasky*, 11 Md.App. 491, 275 A.2d 193 (1971), involved a cab driver who, following an armed holdup, suffered a permanently disabling stroke. The court there

found the injury to be accidental and work related. The second case, *Giant Food, Inc. v. Gooch*, 245 Md. 160, 225 A.2d 431 (1967), involved a claimant who was shot while at work in the employer's parking lot by the willful act of a third person; we found that the injury was "accidental." Similarly, in *Grandinetti*, we found that the employee's injuries, having resulted from a work-related assault and threats, were "accidental" and occurred in the actual performance of duty, thereby equating that standard with the test applied in workers' compensation cases.

*Cicala v. Disability Review Bd.*, 288 Md. 254, 418 A.2d 205 (1980), involved a county police pension plan which provided service-connected accidental disability retirement benefits for an employee injured "as a result of his performance of his duties." The claimant-officer was denied benefits under the plan when the county disability review board determined that his disability, although permanent, was not service connected. In an earlier proceeding before the Workers' Compensation Commission, it was found that the officer's accidental injury arose out of and in the course of his employment. The officer asserted that under applicable principles of res judicata, it was conclusively established that his disability was the result of an injury suffered in the performance of his police duties. While we recognized that the issue before both the Commission and the board appeared to be identical, we declined to apply the res judicata doctrine in the case. At the same time, we explained that although our cases had drawn analogies between the phrase "performance of his duties" in the police retirement and pension plans, and the similar standard in workers' compensation cases, the tests were not identical. *Id.* at 266, 418 A.2d 205. Consequently, we held that because the issues before the Commission and the board were not identical, "it was not reversible for the Board to refuse to consider the findings of the Commission." *Id.* at 267, 418 A.2d 205.

Affording a liberal construction to § 9(j) of Article 22, *Police Comm'r v. King, supra*, 219 Md. at 133–35, 148 A.2d 562, we conclude that the language of the ordinance

and that of the workers' compensation statute is substantially legally equivalent. Novik was upon her employer's premises at the time of her accident and, therefore, under the premises exception to the "Going and Coming" rule, was in the "actual performance of duty." We thus share the view of the Court of Special Appeals that, in the circumstances of this case, Novik's accident was "sufficiently incidental to the actual performance of her duties" to justify the award of accidental disability benefits under § 9(j). 87 Md.App. at 315, 589 A.2d 976. As that court held, in applying the "actual performance" test under § 9(j), a liberal construction of that provision does not require that the employee be injured on the employer's premises only after reaching her actual work station.

Accordingly, we reject the argument that Novik was not in the actual performance of her duties when she was accidently injured on the employer's parking lot. Our cases, particularly *Heaps v. Cobb, Rumple,* and *King,* all *supra,* made applicable in accidental disability pension cases the exceptions to the "Going and Coming" rule honed in workers' compensation cases. As in *Heaps v. Cobb,* 185 Md. at 383, 45 A.2d 73, we find the analogy between the workers' compensation and accidental disability pension statutes "so close on the point at issue that we find no legal distinction in applying the principle."

JUDGMENT AFFIRMED, WITH COSTS.